Shemia Fagan, ISB No. 12416
Email: sfagan@hkm.com
**HKM EMPLOYMENT ATTORNEYS LLP**
999 West Main Street, Suite 100
Boise, ID 83702
Telephone: 208-500-2442
Facsimile: 206-260-3055

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CASEY HARRIS, an individual, | Case No.: _____ |
| Plaintiff, | COMPLAINT FOR DAMAGES |
| v. | DEMAND FOR JURY TRIAL |
| O'REILLY AUTO ENTERPRISES, LLC, a Delaware limited liability company, | |
| Defendant. | |

COMES NOW Plaintiff Casey Harris ("Mr. Harris"), by and through his counsel of

record, and for causes of action and claims for relief, alleges as follows:

## I.    NATURE OF THE ACTION

1.    This is a case about systematic wage theft orchestrated by a corporate manager

who stole his own employees' earned wages to boost his personal bonus. Plaintiff Casey Harris, a

1 – COMPLAINT FOR DAMAGES

U.S. Marine Corps veteran, was hired by Defendant O'Reilly Auto Enterprises, LLC ("Defendant" or "O'Reilly") in August 2024 and quickly excelled in his position, earning performance reviews that consistently rated him as "Exceeds Requirements" and a promotion to Assistant Store Manager within three months. Despite his outstanding performance, Mr. Harris's supervisor, Jeremias Montoya, engaged in a deliberate and sustained scheme to defraud Mr. Harris of his rightfully earned wages by systematically falsifying his timecards in Defendant O'Reilly's payroll system. Montoya repeatedly fabricated meal breaks that Mr. Harris never took, converting earned overtime hours into unpaid time, even as Defendant O'Reilly's own point-of-sale records irrefutably proved that Mr. Harris was actively working and serving customers during the very times Montoya logged him as being off the clock. When confronted by text message, Montoya admitted his fraudulent motive, confessing that he was manipulating employee timecards because it was tied to his bonus. When Mr. Harris complained about these illegal practices, Montoya retaliated by further falsifying records, manufacturing pretexts for discipline, and ultimately coercing Mr. Harris and other employees to approve months of fraudulent timecards under threat of termination. The resulting hostile and intolerable work environment, compounded by ongoing wage theft and retaliation, forced Mr. Harris to resign in June 2025, ending the career of a highly valued employee whose only offense was objecting to his employer's theft of his wages. Mr. Harris has satisfied all administrative requisites before filing this lawsuit.

## II.      PARTIES

2.      Plaintiff Mr. Harris is a resident of Nampa, Idaho.

3.      Defendant O'Reilly Auto Enterprises, LLC's principal place of business is located in Springfield, Missouri.

2 – COMPLAINT FOR DAMAGES

## III.    JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over the dispute under 28 U.S.C. § 1331. The claims in this action arise under the Constitution, laws, or treaties of the United States.

5.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this complaint occurred in Idaho.

6.    Supplemental jurisdiction over Plaintiff's state claims is proper pursuant to 42 U.S.C. § 1367 as the state claims arise from the same nucleus of operative facts as the federal claims.

7.    This Court has jurisdiction over this action under 28 USC § 1332 because Defendant O'Reilly is diverse from Mr. Harris and the amount in controversy exceeds $75,000.

8.    This Court has supplemental jurisdiction over Mr. Harris's state-law claims under 28 U.S.C. § 1367(a) because Mr. Harris's claims are so related to claims in the action within such original jurisdiction that the claims form part of the same case or controversy.

## IV.    FACTUAL ALLEGATIONS

9.    Defendant O'Reilly is a major automotive aftermarket parts retailer that has operated since 1957. O'Reilly conducts business through more than 6,500 retail locations across 48 U.S. states, Puerto Rico, Mexico, and Canada, supported by 31 distribution centers and employing over 93,000 team members. O'Reilly operates as a dominant auto parts retailer in its market areas, serving retail customers, professional installers, and commercial accounts through its extensive network of stores.

10.    On August 24, 2024, Defendant O'Reilly extended an offer of employment to Mr. Harris, stating, "Congratulations Casey, We hope you're celebrating as much as we are! We are

3 – COMPLAINT FOR DAMAGES

excited for you to join Team O'Reilly!" Mr. Harris, a U.S. Marine Corps veteran, accepted the offer and began his employment on August 28, 2024, as a Retail Sales Supervisor at Store #3830, one of Defendant O'Reilly's Nampa, Idaho stores.

11.    Despite having no prior experience in customer service, Mr. Harris quickly distinguished himself as an exemplary employee. His initial "45 Day Evaluation," covering the period from August 28, 2024 to October 8, 2024, and managed by Matt Roberts, rated his performance as "Exceeds Requirements."

12.    Mr. Harris's exceptional performance continued under new management. In his "84 Day Evaluation," for the period ending November 16, 2024, his new manager, Jeremias "Jerry" Montoya, also rated his performance as "Exceeds Requirements."

13.    In recognition of his outstanding contributions and rapid mastery of his role, Mr. Harris was promoted to Assistant Store Manager within approximately three months of his start date, overseeing approximately nine employees. Mr. Harris maintained his position as an hourly employee. Mr. Harris's enthusiasm for his new career was evident.

14.    Mr. Harris's direct supervisor, Montoya, personally acknowledged his strong performance, sending him a text message that read, "Sounds good man Your [sic] doing good. As soon as we get a chance to go over stuff we will talk about a raise." This communication reinforced Mr. Harris's understanding that he was a highly valued employee who was exceeding Defendant O'Reilly's expectations.

15.    This positive environment abruptly deteriorated under Montoya's management. In December 2024, Montoya initiated an unlawful and fraudulent scheme to deprive Mr. Harris of his rightfully earned wages. This fraudulent scheme involved the systematic and clandestine editing of Mr. Harris's timecards in Defendant O'Reilly's WorkDay payroll system. Specifically,

4 – COMPLAINT FOR DAMAGES

Montoya began occasionally altering Mr. Harris's shift start and end times and, on most workdays, fabricating meal breaks by adding them to Mr. Harris' timecard, despite knowing Mr. Harris had not taken, and could not have taken, any such breaks.

16.     As a result of these fraudulent edits, Defendant O'Reilly failed to pay Mr. Harris for all the time he worked, including significant overtime hours. The nature of Mr. Harris's job and Store #3830's chronic understaffing required him to work long hours, often between 10 to 16 hours per day, and to work through nearly every lunch break to keep Store #3830 operational. Montoya's fraudulent timecard alterations systematically converted Mr. Harris' earned overtime hours into unpaid time.

17.     The near impossibility of taking a lunch break was common knowledge among employees at Store #3830. This operational reality stood in direct conflict with an O'Reilly policy that simultaneously prohibited employees from eating at the front counter, placing Mr. Harris and his colleagues in an impossible position where they were forced to work without breaks, without compensation for that time, and often unable to eat during their shifts.

18.     From at least December 2024 onward, Montoya repeatedly and intentionally altered Mr. Harris's time records to create fraudulent unpaid meal breaks, despite possessing objective evidence that Mr. Harris was actively working during those fabricated break periods.

19.     Defendant O'Reilly's own Point-of-Sale ("POS") system records prove that Mr. Harris was consistently performing his duties, processing customer transactions, at the very same times Montoya was logging him as being on unpaid breaks in the WorkDay payroll system. This pattern of falsification was not accidental or occasional; it was a systematic and deliberate practice to steal Mr. Harris's earned wages.

///

5 – COMPLAINT FOR DAMAGES

20.     For example, on January 12, 2025, Defendant O'Reilly's modified WorkDay records show that Montoya entered a thirty-minute unpaid break for Mr. Harris. However, Defendant O'Reilly's POS records confirm that Mr. Harris processed a customer transaction squarely in the middle of his fictitious break period, proving he was actively working and not on a break.

21.     This fraudulent practice continued. On January 26, 2025, Defendant O'Reilly's WorkDay records again show a manager-added unpaid break on Mr. Harris's timecard. Contradicting this entry, Defendant O'Reilly's POS records from that day show Mr. Harris conducting a customer transaction during the supposed break, confirming he was performing his duties.

22.     The pattern of falsification is further documented on February 19, 2025, when Montoya again edited Mr. Harris's timecard to insert an unpaid break. Once more, Defendant O'Reilly's own POS records irrefutably show Mr. Harris processing a customer transaction at the time he was supposedly on his unpaid break.

23.     Mr. Harris and his colleague, Matthew Sparks, shared information and determined their timecards were being altered in late 2024 or early 2025. While Mr. Harris did not yet raise the issue with Montoya in order to not risk retaliation, Mr. Sparks complained to Montoya about changing their timecards in or about early 2025. During that same time period, Mr. Harris's performance reviews inexplicably declined. While under the same manager, Montoya, who had previously rated Mr. Harris's performance as "Exceeds Requirements" in November 2024, Mr. Harris's subsequent "6 Month Evaluation" for the period ending February 25, 2025 showed his rating had been downgraded to "Meets Requirements."

///

6 – COMPLAINT FOR DAMAGES

24.     On numerous occasions, Mr. Harris was recorded as working for the entirety of his supposed breaks. For instance, on March 5, 2025, Defendant O'Reilly's records show Montoya added an unpaid break to Mr. Harris's timecard. However, POS transaction records from that day show Mr. Harris processed one customer transaction just before the end of the supposed break and another immediately after, demonstrating he was continuously at his post and working.

25.     Again, on March 21, 2025, Montoya submitted a modified timecard for Mr. Harris that included a fabricated twenty-five-minute unpaid break. Defendant O'Reilly's POS records from that day prove Mr. Harris was working, showing he processed another customer transaction in the middle of the time he was supposedly not on the clock.

26.     These examples represent only a small fraction of the numerous instances of documented timecard falsification that occurred systematically from December 2024 through the end of Mr. Harris's employment. These fraudulent edits consistently and unlawfully deprived him of pay for hours worked, particularly his earned overtime compensation. Despite Defendant O'Reilly's unlawful treatment of Mr. Harris, he continued to excel at his job, earning a merit pay increase in or about mid-2025.

27.     Defendant O'Reilly's fraudulent scheme was not the result of error or miscalculation, but a deliberate course of conduct orchestrated by its manager, Montoya, for his own direct financial benefit. Montoya communicated his fraudulent purpose to Mr. Harris directly, confessing the motive behind his illegal actions in a text message, admitting he was falsifying employee timecards because it was tied to his bonus.

28.     The corporate pressure on Montoya to manipulate payroll numbers was pervasive. On April 7, 2025, Mr. Harris commented on the extreme measures being taken to reduce labor

7 – COMPLAINT FOR DAMAGES

costs, noting that Store #3830's payroll had been slashed from over 16% to 11%. This resulted in chronically deficient staffing levels, with Mr. Harris describing Store #3830 as running on a "Skeleton crew," where two people opened, and two people closed the store, and that was it, even though they still had all the same requirements. This corporate pressure created the environment and incentive for managers like Montoya to engage in unlawful practices to meet arbitrary payroll targets to earn his bonus.

29. As Defendant O'Reilly's unlawful wage theft continued, Mr. Harris continued to voice his opposition to the illegal practices. On April 22, 2025, Mr. Harris complained to his co-worker, Mr. Sparks, that Montoya had once again falsified his timecard by adding un-taken lunch breaks. Mr. Harris characterized Montoya's conduct as "the sneaky sneaky underhanded bullsh*t," making clear his objection to the ongoing theft of his wages.

30. In direct and swift retaliation for Mr. Harris's protected complaints, Montoya escalated his unlawful conduct by manufacturing a pretext for discipline. On April 29, 2025, Montoya retroactively edited Mr. Harris's schedule for his April 27, 2025 shift. Mr. Harris's original schedule required him to start work at 1:00 PM, and he had properly clocked in five minutes early. Montoya, however, altered the WorkDay system to falsely reflect a 12:00 PM start time, thereby creating a fraudulent record that Mr. Harris had been approximately 55 minutes late for his shift. Nearly immediately, Mr. Harris complained to Montoya about this retroactive change to his shift start time.

31. Just ten days later, Montoya engaged in an even more egregious act of coercion and retaliation designed to conceal his ongoing fraudulent scheme. On May 9, 2025, upon Mr. Harris's arrival at work, Montoya confronted him and every other employee and, using a

threatening tone and demeanor, forced them to approve all of their timecards dating back to November 2024, most of which contained false edits by Montoya.

32.     Montoya's conduct was explicitly coercive. His tone and demeanor led Mr. Harris to believe he would be terminated if he did not approve all of his timecards. Montoya's ultimatum constituted a severe adverse employment action taken in direct retaliation for Mr. Harris's complaints. It was also a blatant and unlawful attempt to create a fraudulent paper trail to ratify and conceal months of wage theft, thereby furthering Defendant O'Reilly's efforts to deprive employees of their lawfully earned wages.

33.     Defendant O'Reilly's persistent and unlawful conduct, including the systematic wage theft and retaliation, inflicted a severe and demonstrable emotional toll on Mr. Harris. The constant stress of being underpaid, overworked in an understaffed store, and targeted by his manager caused Mr. Harris significant mental anguish.

34.     The campaign of retaliation against Mr. Harris for his protected complaints created working conditions so intolerable that he was constructively terminated, forcing him to consider giving his two-weeks notice in early June 2025. Despite his intention to provide two weeks' notice, on or about June 2, 2025, Mr. Harris discovered that Montoya had again falsified his timecard, compelling Mr. Harris to resign on June 3, 2025. This constructive termination was the culmination of Defendant O'Reilly's systematic effort to force out a high-performing Assistant Manager who had consistently received "Exceeds Requirements" evaluations and had been given a raise. The constructive termination stood in stark contrast to Mr. Harris's established record of excellence, with the only negative marks being the retaliatory performance downgrade issued on February 25, 2025, and the fraudulent schedule manipulations that occurred solely after Mr. Harris started voicing complaints about the illegal timecard manipulations. Defendant

9 – COMPLAINT FOR DAMAGES

O'Reilly's creation and maintenance of these intolerable working conditions, including ongoing wage theft, retaliation, and coercive conduct, demonstrates that this constructive discharge was designed to silence Mr. Harris and avoid accountability for its systematic wage theft scheme.

## V.      CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**Failure to Pay Regular under the Fair Labor Standards Act ("FLSA"),**

**29 U.S.C. § 206, et seq.**

35.      Mr. Harris realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

36.      Defendant O'Reilly was an employer within the meaning of 29 U.S.C. § 203(d), engaged in commerce or in the production of goods for commerce as defined by 29 U.S.C. § 203(s), and subject to the minimum wage requirements of the FLSA, 29 U.S.C. § 206.

37.      Mr. Harris was employed by Defendant O'Reilly and engaged in commerce or in the production of goods for commerce as defined by the FLSA during all relevant times.

38.      Pursuant to 29 U.S.C. § 206(a), Defendant O'Reilly was required to pay Mr. Harris at a minimum hourly wage of $7.25 per hour.

39.      Defendant O'Reilly failed to pay Mr. Harris the minimum hourly wage required under the FLSA for all hours worked during one or more workweeks.

40.      Defendant O'Reilly's failure to pay Mr. Harris the applicable minimum wage violated 29 U.S.C. § 206.

41.      The underpayment was not the result of a good faith or reasonable interpretation of the law and was willful within the meaning of 29 U.S.C. § 255(a).

42.     As a direct result of Defendant O'Reilly's unlawful conduct, Mr. Harris suffered lost wages and is entitled to recover the difference between the wages actually paid and the federal minimum wage for all hours worked.

43.     Mr. Harris is also entitled to recover an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b).

44.     Mr. Harris is further entitled to recover reasonable attorneys' fees and costs incurred in this action pursuant to 29 U.S.C. § 216(b).

45.     Defendant O'Reilly's actions constitute a continuing violation and are subject to a three-year statute of limitations for willful violations of the FLSA.

## SECOND CAUSE OF ACTION

### Failure to Pay Overtime under the FLSA, 29 U.S.C. §§ 202, 206, 207, et seq.

46.     Mr. Harris realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

47.     Mr. Harris alleges a cause of action for failure to pay overtime wages in violation of the FLSA.

48.     Mr. Harris was an employee of Defendant O'Reilly during the relevant time period.

49.     Mr. Harris was engaged in commerce or in the production of goods for commerce, or was employed by an enterprise engaged in commerce or the production of goods for commerce with annual gross sales of at least $500,000.

50.     Mr. Harris worked more than forty hours in one or more workweeks.

///

///

11 – COMPLAINT FOR DAMAGES

51. Defendant O'Reilly failed to pay Mr. Harris overtime compensation at a rate of at least one and one-half times Mr. Harris's regular rate of pay for all hours worked over forty in those workweeks.

52. As a result of Defendant O'Reilly's failure to pay overtime as required by law, Mr. Harris suffered damages.

53. Mr. Harris seeks all available remedies under the FLSA, including reinstatement, lost wages, liquidated damages, attorneys' fees, and such other relief as the Court deems just and proper.

## THIRD CAUSE OF ACTION

### Retaliation under the FLSA, 29 U.S.C.§ 215, et seq.

54. Mr. Harris realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

55. Mr. Harris alleges a cause of action for retaliation in violation of the FLSA.

56. Mr. Harris engaged in protected activity under the FLSA by filing a complaint, instituting or causing to be instituted a proceeding under or related to the FLSA, testifying or preparing to testify in such a proceeding, or serving or preparing to serve on an industry committee.

57. Defendant O'Reilly discharged Mr. Harris or otherwise discriminated against Mr. Harris because of Mr. Harris's engagement in protected activity under the FLSA.

58. Mr. Harris's complaint or participation was made either to the Department of Labor or internally to the employer.

59. Mr. Harris suffered adverse employment actions as a result of engaging in protected activity under the FLSA.

12 – COMPLAINT FOR DAMAGES

60.    Defendant O'Reilly's actions were unlawful under Section 15(a)(3) of the FLSA.

61.    As a direct and proximate cause of the unlawful acts committed by Defendant O'Reilly, Mr. Harris suffered and continues to suffer economic and non-economic damages, including but not limited to past and future wage and benefits loss, emotional distress, loss of enjoyment of life, humiliation, pain, suffering, personal indignity, embarrassment, fear, anxiety, anguish and other nonpecuniary losses.

62.    Mr. Harris seeks all available remedies under the FLSA, including reinstatement, lost wages, liquidated damages, attorneys' fees, and such other relief as the Court deems just and proper.

## FOURTH CAUSE OF ACTION

### Failure to Pay Wages in Violation of Idaho Wage Claim Act, Idaho Code § 45-601

63.    Mr. Harris realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

64.    Defendant O'Reilly's actions were willful and/or showed a reckless disregard for Idaho Law.

65.    Defendant O'Reilly failed to compensate Mr. Harris at his regular rate for the personal services that he spent on a time, task, piece, or commission basis for the benefit of Defendant O'Reilly, including hourly wages, salary, commissions, bonuses, and/or earned vacation pay.

66.    Defendant O'Reilly knew, or should have known, that compensation was due to Mr. Harris.

///

///

13 – COMPLAINT FOR DAMAGES

67.     Due to Defendant O'Reilly's unlawful conduct, Mr. Harris has lost hourly wages, salary, commissions, bonuses, and/or earned vacation pay in an amount to be determined by a jury at trial.

68.     Due to the willful and unlawful acts of Defendant O'Reilly, Mr. Harris is also entitled to accrue at the same rate as if Mr. Harris had continued working until his wages are paid in full.

69.     Mr. Harris is entitled to recover his costs and attorneys' fees under Idaho law.

## FIFTH CAUSE OF ACTION

### Failure to Pay Wages in Violation of Idaho Wage Claim Act, Idaho Code § 45-601

70.     Mr. Harris realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

71.     Defendant O'Reilly's actions were willful and/or showed a reckless disregard for Idaho Law.

72.     Defendant O'Reilly failed to compensate Mr. Harris at his overtime rate for the personal services that he spent on a time, task, piece, or commission basis for the benefit of Defendant O'Reilly, including hourly wages, salary, commissions, bonuses, and/or earned vacation pay.

73.     Defendant O'Reilly knew, or should have known, that compensation was due to Mr. Harris.

74.     Due to Defendant O'Reilly's unlawful conduct, Mr. Harris has lost hourly wages, salary, commissions, bonuses, and/or earned vacation pay in an amount to be determined by a jury at trial.

///

14 – COMPLAINT FOR DAMAGES

75. Due to the willful and unlawful acts of Defendant O'Reilly's, Mr. Harris is also entitled to accrue at the same rate as if Mr. Harris had continued working until his wages are paid in full.

76. Mr. Harris is entitled to recover his costs and attorneys' fees under Idaho law.

## SIXTH CAUSE OF ACTION

### Failure to Pay Wages When Due, Idaho Code § 45-606

77. Mr. Harris realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

78. Defendant O'Reilly was Mr. Harris's employer under the laws of the State of Idaho.

79. Upon termination of Mr. Harris's employment, Defendant O'Reilly failed to pay Mr. Harris all wages due by the earlier of the next regularly scheduled payday or within ten (10) days of the termination, excluding weekends and holidays, as required by Idaho Code § 45-606(1).

80. Mr. Harris made a written request to Defendant O'Reilly for earlier payment of wages.

81. Despite such request, Defendant O'Reilly failed to pay all wages due within forty-eight (48) hours of receiving that request, excluding weekends and holidays, in violation of Idaho Code § 45-606(1).

82. Defendant O'Reilly was not exempt from the minimum wage requirements of Chapter 15, Title 44, Idaho Code, and therefore was required to pay Mr. Harris at least the applicable minimum wage for all hours worked during the pay period immediately preceding separation.

15 – COMPLAINT FOR DAMAGES

83.     Defendant O'Reilly failed to make this minimum wage payment within the time limits mandated by Idaho Code § 45-606(2).

84.     Defendant O'Reilly did not obtain a temporary extension from the director as provided for in Idaho Code § 45-606(3).

85.     As a direct and proximate result of Defendant O'Reilly's violation of Idaho Code § 45-606, Mr. Harris suffered damages including, but not limited to, unpaid wages and financial hardship.

86.     Mr. Harris is entitled to recover all unpaid wages, along with any additional remedies available under Idaho law.

## SEVENTH CAUSE OF ACTION

### Fraud - Common Law

87.     Mr. Harris realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

88.     Defendant O'Reilly made a false representation concerning a past or present fact.

89.     The fact was material.

90.     At the time Defendant O'Reilly made the representation, Defendant O'Reilly either knew it was false or consciously disregarded whether it was true or false.

91.     Defendant O'Reilly intended for Mr. Harris, or a group of which Mr. Harris was a member, to rely on the representation.

92.     Mr. Harris relied on the representation.

93.     Mr. Harris's reliance on the representation was justified.

94.     Mr. Harris's justified reliance directly caused injury, damages, or losses.

///

16 – COMPLAINT FOR DAMAGES

**EIGHTH CAUSE OF ACTION**

**Wrongful Termination in Violation of Public Policy**

95.     Mr. Harris realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

96.     Defendant O'Reilly discharged Mr. Harris because he asserted rights to which he was entitled under Idaho Law.

97.     Discouraging the conduct in which Mr. Harris engaged, asserting his rights and/or the rights of protected persons under Idaho Law, jeopardizes these important public policies.

98.     As a direct and proximate result of Defendant O'Reilly's unlawful conduct, Mr. Harris has incurred and continues to incur economic losses in an amount to be proven at trial.

99.     As a direct and proximate result of Defendant O'Reilly's unlawful conduct, Mr. Harris has suffered and will continue to suffer mental stress, humiliation, inconvenience and loss of enjoyment of life all due to his non-economic loss in an amount to be determined at trial.

**VI.     ATTORNEY FEES AND COSTS; PREJUDGMENT INTEREST**

100.    Mr. Harris realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

101.    As the direct result of Defendant O'Reilly's actions and omissions, Mr. Harris has been required to bring this action.

102.    Pursuant to Federal Rule of Civil Procedure 54, Idaho Code § 12-120(3), and other applicable law, Mr. Harris is entitled to recover attorneys' fees and costs incurred herein.

103.    Mr. Harris is also entitled to prejudgment interest pursuant to Idaho Code § 23-22-104.

///

17 – COMPLAINT FOR DAMAGES

## VII.    DEMAND FOR JURY TRIAL

104.    Mr. Harris demands a trial by jury on all issues so triable, pursuant to Federal Rule of Civil Procedure 38.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Mr. Harris prays for entry of judgment as follows:

A.    Damages for back pay and benefits lost and for future pay and benefits lost;

B.    Actual damages;

C.    Statutory damages;

D.    Liquidated damages;

E.    Non-economic damages for emotional distress, pain, suffering, and humiliation;

F.    Punitive damages;

G.    Pre- and post-judgment interest in an amount to be proven after trial;

H.    Reasonable attorneys' fees and costs;

I.    Injunctive relief; and

J.    Such other and further relief as the Court deems just and equitable.

DATED: January 22, 2026.

HKM EMPLOYMENT ATTORNEYS LLP


By: */s/ Shemia Fagan*
        Shemia Fagan, ISB No. 12416
        Email: sfagan@hkm.com

*Attorneys for Plaintiff*


18 – COMPLAINT FOR DAMAGES